Hey, please be seated. Okay. This case today is Collins versus County of Vermilion. Good afternoon, your honor. My name is Natalie Thompson and I'm here for the defendant appellant County of Vermilion. The County of Vermilion operates an animal shelter in Vermilion County. And the plaintiff, Stephen Collins, and his family were at this animal shelter adopting a dog. His fiancée and his children were filling out the paperwork for the dog that they were adopting. And the plaintiff went to look at bigger dogs. He did not ask for permission or assistance or notify anyone that he was going to look at these dogs. And he wasn't accompanied by anyone. He went in there, he saw a dog in the cage, put his hand into the dog's cage, and with his hand, fully inside of the cage, was bit by the dog. This suit and this appeal followed. Both of the parties filed for summary judgment and they were denied. The trial court judge found that there were disputed material facts. Both parties agreed that there were no material facts and that summary judgment was granted for the plaintiff. The only issue in dispute is one of the elements of the Animal Control Act. There are four elements. The only element that is disputed is whether the plaintiff was in a place that he had a lawful right to be. The plaintiff had the burden of proving that he was in a place where he had a legal right to be, and he has not done so, and evidence shows it is to the contrary. The animal shelter had a policy in place at the time that members of the public were not to place their hands or any part of their body into the animal's cages. Was there any sign up saying that? There were signs. There's nothing in the record saying that they... Well, counsel, if there's nothing in the record, then there were no signs. Right. He did say that he saw signs regarding the handling of animals in the animal's cages, but there are no specifics in the record that state not to put your hands in the sign. And that's basically what the plaintiff is arguing, that he did not have notice of this policy. Well, let me ask a different question. How big is the animal shelter? How big is the animal shelter? I've not been to the animal shelter. Okay. Well, I mean, I presume there's... You walk in, there's a little reception area. Right. Okay. And then back to that are cages. Right. It's actually behind a closed door where the cages were, and that's in the record. The defendant doesn't dispute, though, that the plaintiff was allowed into the room where the cages were. By who? He... Well, by no one. He just went in there. But we're saying... I mean, we aren't really saying that he didn't have a legal right to be in that room, that he could look at the animals in that room. But placing his hand into the cage, then, is what created the issue of there being no legal right for him to be inside of the animal's cage itself. Well, was there a sign saying you're not supposed to be inside any part of your body inside the cage? No. However, the statute does not provide that notice of unlawfulness is necessary. What the statute says is that it just says that the plaintiff has to show that he was in a place that he had a lawful right to be. There is no notice requirement here. Further, I don't think notice is really necessary where common sense dictates that you should not be placing your hand inside of an animal's cage. And I think, on the flip side, I know the plaintiff is saying it's common sense that I should be able to put my hand inside of this. Depends on the animal in the cage. Correct. I mean, if it's fluffy, no problem. If it's killer brutus, problem. Right? Well, I guess you could say that. I guess you would have no idea of the nature of the animal just by looking at it. And that's why this policy is in place. And that's why if he would have told someone or asked someone about putting his hand in the cage, they would have advised him not to do so. And, I mean, I don't know if you have been to an animal shelter, but when you go, you typically go and you look, and then they take them out. Then you go in a separate little room, and you get to spend time with the animal where you're not inserting yourself into these animals' personal space, basically. Do they normally display animals, though, that are vicious, and that if you approach them and said, I'd like you to take this dog out for me, they'd say, no, this dog will attack you. We can't take this dog out for you. You know, I don't think that they do. I think that that's not a typical policy of any animal shelter. That's obviously not in the record here. You know, but I do think there is a difference in taking the animal outside of its cage, as per the policy, rather than, you know, I mean, these animals might be scared, they're confused, they're used to being in this cage alone, and then something's inserted into the cage rather than it coming out and being in the open. And I think that's the whole reason for this policy here. I also think that the considerations made by the child judge in making this ruling were improper. What she did is she looked at the whole situation and the way the world works today, which isn't necessarily consistent with the statute, which I think is pretty clear. She also relied on a case called Kirkham v. Will, which is what she claimed she based her decision on. And what Kirkham v. Will dealt with, it was the same, you know, an animal-like case. What Kirkham involved was provocation. There was a jury instruction given by the trial court judge in Kirkham that basically told the jury, you can consider whether they had a legal right to be here on what the plaintiff reasonably expected. Now the appellate court does not address this jury instruction at all. They even say, we're not going to address that because the plaintiff never, they waive their objection and all of this. So then what a trial court judge does here is uses this reasonably expected standard in our case and I don't think that was proper. That's not what the statute says. Further, in Kirkham, that issue, the issue of lawfulness was a question of fact that went to the jury, which certainly wouldn't be proper for the summary judgment motion. And as she said, that's what she based her decision on. More importantly, the intent of the Animal Control Act, based on Illinois law, they say the purpose is to require owners to keep their animals under tight control. The Supreme Court has stated that the intent was to provide coverage for plaintiffs who may not have any way of knowing or avoiding the risk that the animal poses to them. Here the animals were certainly under tight control. They're within cages. The case, the heart of pillow case, is kind of similar. The dog was behind a locked gate. He couldn't get out. The court says that it was impossible for the dog to attack the plaintiff. Same with here. The dog could not have in any way attacked the plaintiff if the plaintiff hadn't put his hand into the cage. And seeing as the animal control did keep the animals under tight control, and had he not placed his hand across the barrier, he wouldn't have been attacked. I realize it's a pretty simple issue. I think that is basically it laid out. I do think that it was improper for the trial court to rely on Kirkham. Are you asking us to reverse and remand with directions that the trial court grant your motion for summary judgment? Yes, Your Honor. What's the authority for that? The authority for? The denial of your motion for summary judgment is an interlocutory order. What gives you the right to appeal? I guess what we're doing then is just. . . You're appealing the grant for them. Right. But where do you know from whence comes the argument? By the way, when you reverse them, direct the trial court to change its order and grant us summary judgment. I guess that would just come from denying this or reversing this. You've got to be careful what you're requesting, counsel. Sure. I'm not familiar with any authority that suggests we should do such a thing. I guess we would just request that it be reversed. Okay. Or simply that we just reverse it. I did also want to address the alternative argument that was raised by the appellee, which wasn't raised at the trial court level, in which he cited Messa v. Sullivan where a woman was attacked. She went to a building for business purposes, went on to the fifth floor, which was a residence. The court said there was no way for her to know it was a residence and the whole building should be assumed to be for business purposes. And the plaintiff is attempting to relate that here in that the whole building here was for business purposes. I do agree that the building and the room were for business purposes. I don't agree that the cage was. I don't agree that going into the cage was similar to the Messa case. I think that if the dog had been roaming free in the animal shelter with the plaintiff, I think that we would have a similar situation. Do you have any responsibility to post signage around the animal shelter saying limited access, don't put your hands in the cage, anything like that? Nothing that plaintiff has cited. I mean, there's been no legal authority relied on by the plaintiff showing that we need to be providing notice of our policies. And it is the plaintiff's burden to show that they were in a place that they had a lawful right to be. And the statute doesn't require notice of unlawfulness or us to prove that they were trespassing. So are there any other questions? I don't see any. Thank you. You'll have additional time on your vote. Thank you. As you've already heard from my opponent, the issue here is whether he was in a place that he lawfully had a right to be when he put his fingers or hand in the cage to pet. Well, that's really not the issue. He's clearly in a place that he lawfully has a right to be, but does that include sticking his fingers in the cage? Aren't these two different kinds of issues? No, I think that's what I said. The issue is when he stuck his fingers in the cage, did he pass into an area where he did not have a lawfully right to be? Who should decide that? I think the trial court had the right to decide that based upon the circumstances of where he was at. It's not a question of the reasonableness of all of this for a jury? I don't think so. I think this could be decided by the judge in order to determine whether or not… Because I have a right to walk into the back of this room and look at Hamilson cages. I automatically have the right to stick my fingers into a cage. Is that your position? I think under these circumstances, yes. I think he had every right to expect… What about these circumstances make that answer true? Because he was in a place where they were offering dogs up for adoption, and so he went back there to look at the dogs, to interact with the dogs. Counsel even said, if you want, we'll take the dog out of the cage and you can spend time with it. What would be the difference between that and petting the dog through the cage? I don't run any animal shelter, but one of the differences I could see would be, you don't want to take that dog out, we're still working with him, and he's not ready for that yet. See, that's when you talk to the staff, the staff would know that, could tell you that, as opposed to a claim that because I'm permitted to be back there with the animals in cages, all animals are receptive to my sticking my fingers into their cage. That's your position, isn't it? I think the animals would be, depending on what you view, I think it was brought up earlier, is this a snarling guard dog who's in there, or is it a dog who's just sitting there with his head or mouth up by the fence wanting some attention? The trial judge can decide this because no reasonable person could possibly differ? I won't go that far. Well, isn't that pretty much the standard? No genuine issue of material fact? There's no genuine issue of material fact because who could possibly disagree with that conclusion? I think the issue of material fact was placing the fingers into the cage is how we, I think both myself and my opposing counsel, Whether that was an appropriate, reasonable thing to do is really the issue, isn't it? I suppose it is at this point. But does that answer the question as to whether he lawfully had a right to be there or not be there? Well, that's not the question. I mean, his injury was occasioned by his actions of sticking his hand in the cage. He had a right to be in the room, apparently. Although, if I were running a animal shelter, I would say, You're not allowed back here without supervision. But that's for me to encounter as a problem. But he went beyond just taking a look at, you know, the doggies. He stuck his hand in a cage to a pet, an unknown animal. And quite frankly, you've got a reasonableness evaluation to make whether or not he's contributory negligent. Except that there was no negligence claim made in this case, so there could be no contributory negligence. The sole count of the complaint was the Animal Control Act, which is statutory. And one of those elements is that he was in a place that he lawfully had a right to be. And when I say lawfully right to be, I'm not talking about in the room of the kennel with all the cages. I'm talking about in the space behind the gate, behind the fence. But you phrase it as if what happened in your claim about he had a right to be there, as if one of the cages wasn't properly locked. And while he was in this place he had a lawful right to be, some vicious dog pushed up against the gate to its cage. And got out. Got out and bit him. He'd have a hell of a claim. Yeah, I don't think we'd be here. Yeah, I think that's right. But that's not quite what we have here. It's not that the dog got out of the cage. It's he stuck his fingers in the cage. Right. So I guess under the Animal Control Act, which is a statutory violation, not a negligence claim, then the issue becomes did he or did he not have a lawful right to place his fingers? And no reasonable person could conclude that his doing so was an unreasonable act on his part. I would not accept that or say that, no. Had this been a jury trial and had this been all the evidence at trial, I'm going to direct the verdict for the plaintiff because I'm saying, well, there's nothing to talk about here, ladies and gentlemen. How could the jury not find him negligent? Well, I think if I, you know, going to the animal shelter, which is, he's an invitee and it's open to the public. There's no dispute that he's allowed to go back into the kennel where there are, you know, literally dozens of animals and dogs. This is a pretty concise place. And he sees a dog that he's interested in and it appears friendly. He goes over and puts his fingers through the cage and tries to pet it. How is that any different than a person who maybe comes to my house or even would come to my business? I have a dog there who's maybe in a particular room. And I'm just thinking, once you're in my home, once you're in their animal shelter, I see no reason why that would be off-limits or that would be unlawful for him to be there. Unlawful trespassing by putting his fingers in a cage to pet a dog. I don't think it doesn't have to be unlawful. I don't think you're charging with criminal trespass. The question for the statute is, is that a place where he has a right to be? Right. And our position is, yes, he did lawfully. That's the word in the statute, lawfully had a right to put his fingers in the cage. He wasn't breaking any law or trespassing by putting his fingers in that cage. He was merely trying to pet a dog that he had some interest in. And I think under these circumstances, if you're a person there trying to adopt a dog, it's reasonable that you're going to try to make some kind of a contact. That's why people have pets, so they can have that interaction and that physical contact. That's all I have. Great. Any questions? I think that the distinguishing thing here between going to a house or an office where someone has a dog is the fact that, like I spoke about, the intent of the Animal Control Act is for people to keep control over the animals. If an animal was in a cage in his office and someone went and put their hand in there and got bit, I don't think he would be saying the same thing. I think that he would say, why did you put your hand in that cage? The dog was in the cage for a reason. Well, careful, Counselor, to get into a touchy area. I have office cats who run around there. Freedom of, you know, we haven't had any issues yet. Right. And I agree with you, but I think, you know, if one of them attacked someone, he probably would put it out to me, I see. Honestly, I think, you know, the point of going in there is to view the dogs. The other thing, I really don't see the difference here between putting your fingers in the cage and actually opening the cage, and I think that is where our position stands, and we would respectfully request that you reverse. Thank you. Thank you. We'll take this matter under advisement, stay in recess until the next call.